UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGE BRUNNER,

                         Plaintiff,              10-CV-6338T

              v.                                 **ORDER**

NOVARTIS PHARMACEUTICAL CORPORATION,

                         Defendant.
_____

### INTRODUCTION

Plaintiff George Brunner, ("Brunner"), brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the New York Human Rights Law, codified at § 296 of the New York Executive Law, claiming that he was terminated from his employment with Novartis Pharmaceutical Corporation ("Novartis"), and denied a promotion, on the basis of his age. Specifically, plaintiff, a former pharmaceutical sales representative, claims that he was scrutinized more closely than other employees by Novartis because of his age, and ultimately fired from his employment on the basis of his age.

Defendant denies plaintiff's allegations, and moves for summary judgment against Brunner on grounds that Brunner has failed to state a cause of action for employment discrimination. Novartis contends that Brunner did not receive a promotion because another qualified candidate did, and was fired because he violated company guidelines with respect to hosting or participating in sales events, and was among the poorest performers in terms of sales.

For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

## BACKGROUND

Plaintiff George Brunner was hired by defendant Novartis Pharmaceutical Corporation as a Senior Account Manager in July, 2004. At the time Brunner was hired, he was 56 years old. Brunner claims that although he performed his job as a Senior Account Manger well, within six months of being hired, he was nevertheless transferred to the position of Primary Care Representative, a position he considered a demotion. Although plaintiff claims that the transfer was a demotion, he admitted during his deposition that the transfer resulted in no diminution of benefits or compensation. Deposition Testimony of George Brunner at pp. 30-31. Moreover, plaintiff further admitted during his deposition that he was transferred because the division he worked in was eliminated, and most other employees, except for at least one employee who was terminated, were also transferred. Deposition Testimony of George Brunner at pp. 23, 27, 29-30.

As a Primary Care Representative, Brunner specialized in promoting and selling certain products sold by Novartis, including medications for the treatment of Alzheimer's disease, overactive bladder, and high blood pressure. Brunner reported to District Manager Patrick Morris, ("Morris") who during all relevant periods

was over the age of 40.  In Brunner's performance evaluation of 2005 prepared by Morris, he rated Brunner a "2" (on a scale of 1 to 3, 1 being low, and 3 being high) with respect to his performance versus his objectives for the year, and a "2" in the area of "values and behaviors."  The "values and behaviors" rating reflected areas including customer focus, innovation, creativity, leadership, accountability, integrity, collaboration, teamwork, and communication.

In 2006, Brunner received an improved evaluation, scoring a "3" in the area of performance, and a "2" in the area of values and behaviors.  In 2007, Brunner received a "2" in both areas.  In that year, Brunner ranked 37th out of 56 sales representatives in the region, and his goals for 2008 were to move in to the top 50% of sales representatives.  In 2008, however, Brunner fell to 45th out of 50 sales representatives.  He was rated a "1" by Morris in the area of performance, and a "2" in the area of values and behaviors. In a self-evaluation, Brunner rated himself a "1" in the area of performance, and in his deposition testimony, acknowledged that his sales numbers were "not good" and "below target." Deposition Testimony of George Brunner at p.  85.

In the fall of 2008, Burner applied for a sales management position in the Long Term Care Division, a newly formed division that serviced many of the same customers as the Senior Care Division that was eliminated at the end of 2005.  During his

interview for the position, one of the two people interviewing Brunner suggested that Brunner "would not know what a 'data switch table' is."[1]  According to Brunner, the remark indicated a bias against his age, because the interviewer assumed that Brunner was too old to understand the technology.  Brunner, who was one of approximately 50 to 100 candidates for 10 to 15 openings, did not get the job.  Brunner claims that a less qualified candidate who was under the age of forty at the time, was hired for the position Brunner sought.

As of March, 2009, Brunner was ranked 86 out of 120 sales representatives in the Northeast Region.  In July, Brunner fell to 93rd out of 120.  In May, 2009, following an investigation into a sales event organized by Brunner, Morris issued a "conduct memo" to Brunner informing him that the event violated several ethical guidelines established by Novartis to ensure that its sales events complied with state and federal laws and regulations.  The event at issue was a "roundtable" hosted by Brunner which took place at a restaurant in Rochester, New York.  According to Novartis, a "roundtable" is an event paid for by Novartis where physicians and/or other health care professionals are invited to learn about and discuss products offered by the company.  To ensure compliance

---

[1] A "data switch table" is a software based computer application which allows different types of data to be displayed, and switched, on a computer screen.  Deposition Transcript of George Brunner at p.  41.

with applicable laws and regulations, Novartis requires, <u>inter alia</u>, that only health care professionals attend, and that all participants sit in a common area to facilitate discussion of the Novartis products being featured.

It is undisputed that at the event hosted by Brunner, unauthorized participants, including relatives of healthcare professionals, attended the event.  While Brunner claims that he was unaware prior to the event that unauthorized participants would be accompanying the invited guests, he admits that he knew unauthorized people were in attendance, but decided that it would be better to continue with the event rather than cancel it.  It is further undisputed that the participants did not sit in a common area or at a common table.

When Novartis became aware of the apparent improprieties with the event, it initiated an investigation of program.  As part of the investigation, Novartis requested receipts for the event from Brunner, as well as the original sign in sheet.  The receipts submitted by Brunner, however, reflected a different date and time from the event that was actually held.  According to Brunner, he was unable to produce receipts from the actual event for reasons that were "outside of [his] control."  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at p. 18.  Plaintiff was also unable to supply the original sign-in sheet for the event for more than two months after the sheet was

requested.  Moreover, the original sign-in sheet, in violation of Novartis' policy for conducting roundtables, contained names that were filled in by Brunner himself, rather than the attendees. Based on the results of the investigation, Novartis concluded that Brunner had likely doctored the attendance sheet for the event.

The conduct memo issued by Morris in June 2009 noted Brunner's deficiencies in conducting the roundtable, and informed Brunner that any further failure to file company guidelines with respect to holding events could result in disciplinary action, including termination of employment.

Throughout the first seven months of 2009, Morris, who as a District Manager overseeing a regional sales force routinely accompanied his sales representatives on sales calls for the purpose of observing his sales staff and critiquing their performance, occasionally accompanied Brunner on sales calls to doctors throughout plaintiff's sales territory.  While Morris noted several positive areas in plaintiff's performance, Morris often noted that Brunner did not "close the sale" as forcefully as Morris would have liked.  Morris noted that Brunner was not meeting expectations in terms of closing sales and marketing two particular drugs to what Novartis deemed its most important physician group, "Tier I" doctors.

As a result of plaintiff's declining sales performance, failure to comply with company policy regarding the roundtable

event he hosted, and deficiencies noted by Morris on sales calls, Brunner was placed on a "Performance Improvement Plan" by Novartis in July, 2009.  While the Improvement Plan was designed to assist plaintiff in improving his sales performance, the Plan itself stated that if Brunner could not satisfactorily improve his performance, he could be subjected to additional action, including the termination of his employment.

On July 30, 2009, however, the day after Brunner received his Performance Improvement Plan, he began a short-term disability leave.  There is no indication in the record as to why Brunner took the disability leave, or whether or not it was scheduled prior to his receiving the Performance Improvement Plan.[2]  Although he was scheduled to return to work on September 14, 2009, Burner extended his leave to a date not specified in the record, but sometime after January 24, 2010.  See Exhibit "P" to the Declaration of Jeremi Chylinski (Docket item no.  32 at p.  135, 153)

Before Brunner commenced his disability leave, Novartis became aware of another potential violation of company policy by Brunner

_____

[2] In his administrative complaint of discrimination, plaintiff contends that he suffers from Retinoblastoma and Post Traumatic Stress Disorder.  He suffered Retinoblastoma as an infant, and as a result, lost one eye, and uses a prosthetic eyeball.  Brunner also stated in his administrative complaint that although "[b]oth the timing and the reasons for disability leave are by law protected" issues related to driving and multitasking while in the car had been "exacerbating in the last few years and culminated in my medical leave." See Exhibit "P" to the Declaration of Jeremi Chylinski (Docket item no.  32 at p. 141-142).

with respect to an informational luncheon conducted in Geneva, New York. According to Novartis, Brunner hosted a "lunch-and-learn" at Geneva Hospital on the subject of Kyphoplasty, a type of spinal surgery not directly related to any drug sold by Novartis. Brunner contends in an affidavit that he did not host the lunch-and-learn, but instead was invited to participate in the program.[3] Brunner further contends that the Novartis drug "Reclast" was discussed for 15 to 20 minutes of the program.[4] Although he claims that he was only invited to the program, Brunner admits that he submitted an expense report for the event. See Exhibit "P" to the Declaration of Jeremi Chylinski (Docket item no. 32 at p. 144).

Upon plaintiff's return to work sometime after January 24, 2010, Novartis interviewed him regarding the lunch-and-learn program, as part of its investigation into whether or not company rules were violated at the function. Novartis determined that Brunner had violated company policy by sponsoring a program that

---

[3] Although Brunner claims that Novartis did not sponsor the event, he admitted during his deposition that Novartis paid for the food served at the event, which was attended by approximately 20 people. Deposition Testimony of George Brunner at p. 181. Brunner further stated that he conducted at least 10 lunch-and-learn programs per year at Geneva Hospital, and that he would have been fired had he not held at least 10 lunch-and-learns. Deposition Testimony of George Brunner at p. 185.

[4] Although Brunner states in his affidavit that the drug Reclast was discussed for 15 to 20 minutes during the lunch and learn, (Brunner Affidavit at ¶ 46) he testified during his deposition that Reclast was only "mentioned" at the lunch and learn. Deposition Testimony of George Brunner at p. 183.

was not related to one of its products.  Having determined that
Brunner violated company policy again with respect to an
educational outreach program, Novartis terminated Brunner's
employment as of February 22, 2010.

## DISCUSSION

I.  <u>Defendant's Motion for Summary Judgment</u>

 Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."  When
considering a motion for summary judgment, all genuinely disputed
facts must be resolved in favor of the party against whom summary
judgment is sought.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).
If, after considering the evidence in the light most favorable to
the nonmoving party, the court finds that no rational jury could
find in favor of that party, a grant of summary judgment is
appropriate.  <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec.
Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587
(1986)).

II.  <u>ADEA Claims</u>

A.  Plaintiff has failed to state a <u>Prima</u> <u>Facie</u> case of Age
     <u>Discrimination</u>

Plaintiff alleges that he was discriminated against on the
basis of his age by being denied a promotion, and by being

terminated from his position as a sales representative for Novartis.  The Age Discrimination in Employment Act provides in relevant part that: "[i]t shall be unlawful for an employer- (1) to . . . discharge any individual or otherwise discriminate against any individual . . . because of such individual's age . . . ."  29 U.S.C.A. § 623. (1985).  To state a claim for age discrimination under the ADEA, a plaintiff must demonstrate that: (1) he is in a protected category; (2) he was performing satisfactorily; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of age discrimination.  Grady v. Affiliated Cent. Inc., 130 F.3d 553 (2nd Cir. 1997); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Promisel v. First American Artificial Flowers, 943 F.2d 251, 259 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992).  If a plaintiff is able to establish a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions.  Should the defendant make such a showing, the burden then shifts back to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination. Id.

In the instant case, it is undisputed that plaintiff, who was 56 at the time he was hired, is in a protected category under the ADEA, and that he suffered adverse employment actions of not receiving a promotion he applied for and being terminated from his

employment.  Assuming arguendo that plaintiff can establish that he was performing his job satisfactorily, to establish a prima facie case of age discrimination, Brunner must demonstrate that the alleged adverse employment actions he suffered occurred under circumstances giving rise to an inference of discrimination.  For the reasons that follow, I find that plaintiff has failed to make such a showing.

    1.  <u>Failure to Promote</u>

Brunner alleges that he was not promoted to a management position that he applied for, and that he was denied the promotion because of his age.  In support of this contention, plaintiff notes that the promotion went to a person under the age of forty, and that during his interview for the position, one of the interviewers claimed that Brunner would not know what a "data switch table" was.  Brunner alleges that the interviewer's remark demonstrated a bias against workers over the age of forty, because it suggested that the interviewer believed older workers would be unfamiliar with certain types of computer technology.  This is the sum of plaintiff's evidence of discrimination with respect to his failure to promote claim.

Initially, there is no evidence in the record to suggest that the interviewer's comment that Brunner would not know what a data switch table was reflected any sort of prejudice.  Although Brunner speculates the comment revealed some sort of bias, speculative and

conclusory allegations of discrimination are not sufficient to make out a prima facie case of discrimination. <u>Wright v. Milton Paper Co.</u>, 2002 WL 482536, *8 (E.D.N.Y., March 26, 2002) (citing <u>Stern v. Trustees of Columbia Univ.</u>, 131 F.3d 305, 312 (2d Cir.1997). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir.1997)(citing <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.1985)). Here, the comment regarding not "knowing what a data switch table is" is not inherently discriminatory, and plaintiff has provided no evidence (conclusory allegations are not evidence) suggesting how the comment was discriminatory. Accordingly, I find that plaintiff has failed to establish any discriminatory animus with respect to the comment regarding the data switch table.

With respect to plaintiff's claim that he was not hired for the management position because of his age, and that a person under the age of 40 was selected, the discrepancy in ages alone can not establish a prima facie of discrimination case unless the plaintiff can establish that the decision maker knew the ages of the candidates. Specifically, to establish a prima facie case of discrimination based solely on a claim that a younger employee received a promotion that an older employee did not receive, the plaintiff must establish that the defendant had knowledge of the

candidates ages, and the age discrepancy between the candidates. Woodman v. WWOR-TV, Inc., 411 F.3d 69.  79 (2nd Cir., 2005)("a defendant's knowledge [of the candidates' ages] is relevant to an inference of age discriminatory intent at the prima facie stage. . . .") In the instant case, however, plaintiff has failed to rebut the evidence submitted by the defendants that the persons who interviewed Brunner, and the younger candidate who was eventually offered the management position, knew the ages of either candidate. Wayne Morrow, who along with David Rosen interviewed the candidates and made the hiring determination, testified that he did not know Brunner's age.  Deposition Testimony of Wayne Morrow at p. 18, 23. Moreover, it is uncontested that Burner admitted that he never disclosed his age to Morrow or Rosen.  Defendant's Statement of facts at ¶ 30; Deposition Transcript of George Brunner at p. 41, 42.  Because the plaintiff has failed to present any evidence that Novartis knew Brunner's age or the age of the successful candidate, plaintiff has failed to make a prima facie showing that discrimination can be inferred from the hiring of a younger individual.  Woodman, 411 F.3d at 90 ("an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a prima facie inference of discriminatory intent."). Because plaintiff has failed to establish a prima facie case of discrimination with respect to his failure to promote claim, I

grant defendant's motion for summary judgment with respect to this claim.

2.   <u>Termination of Employment</u>

Brunner contends that he was terminated from his employment because of his age.  As stated above, it is uncontested that Brunner is a member of a protected class for purposes of the ADEA, and that he suffered an adverse employment action.  Assuming <u>arguendo</u> that he can establish that he was performing his job satisfactorily, to state a prima facie case of discrimination, Brunner must demonstrate that the adverse employment action occurred under circumstances giving rise to an inference of age discrimination.  <u>Grady</u>, 130 F.3d 553; <u>McDonnell-Douglas Corp.</u>, 411 U.S. 792, 802 (1973).  A plaintiff may establish an inference of age discrimination by demonstrating that he was treated less favorably than significantly younger employees, or was replaced by a significantly younger employee, <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir.2001); <u>Cretella v. Liriano</u>, 633 F.Supp.2d 54, 71 (S.D.N.Y., 2009), or that a discriminatory animus played some role in the adverse action taken against the plaintiff.  <u>James v. Newsweek</u>, 1999 WL 796173 (S.D.N.Y., Sep 30, 1999) ("plaintiff must produce some evidence from which a reasonable inference of discrimination can be drawn.")(citing <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134-35 (2d Cir.1997).  Though plaintiff's burden of setting forth a prima facie case is "far from onerous . . . he

nevertheless must provide some evidence--direct or circumstantial--to survive a motion for summary judgment. <u>Williams v. Brooklyn Union Gas Co.</u>, 819 F.Supp. 214, 224 (E.D.N.Y. 1993)(citing <u>Stanojev v. Ebasco Services, Inc.</u>, 643 F.2d 914, 921 (2d Cir.1981); <u>Littman v. Firestone Tire & Rubber Co.</u>, 709 F.Supp. 461, 465 (S.D.N.Y.1989).

In the instant case, plaintiff has failed to establish that he was terminated under circumstances giving rise to an inference of discrimination. Initially, it is well established in this Circuit that any inference of age discrimination is undercut where the plaintiff was over the age of forty when he or she was hired. <u>Grant v. Rochester City School Dist.</u>, Slip Copy, 2013 WL 3105536 (W.D.N.Y., June 18, 2013). In the instant case, Brunner was 56 years old when he was hired. Accordingly, even though Brunner's burden of establishing an inference of discrimination is low, he must overcome the fact that he was in the protected age category when he was hired.

Brunner, however, has failed to present any evidence, other than conclusory allegations of discrimination, that age played a determining factor in the decision to terminate his employment. Plaintiff has made no allegation that he was subjected to any disparaging remarks regarding his age, or that any remarks generally were made by any employee suggesting a bias against employees over the age of 40. <u>See</u> <u>Scelza v. North Fork Bank</u>,

33 F.Supp.2d 193, 202-03 (E.D.N.Y., 1999)(granting summary judgment to defendant employer where there was no evidence that any employee or manager "made invidious comments about [the plaintiff's] or anyone else's age, or that [defendant] held discriminatory attitudes towards older workers."

The undisputed evidence demonstrates that at the time Brunner was fired, he was among the worst-performing sales representatives in his region.  The evidence also reveals that Novartis had concluded that Brunner had violated company policies on two occasions with regard to his sponsoring of educational programs. The evidence reveals that plaintiff suffered from deficiencies in producing sales; that the plaintiff recognized the deficiencies, and that he had violated company policy with respect to educational outreach programs.

Plaintiff alleges that he was hampered in his ability to complete sales because he was required to drive long distances to his sales territory, and because he was "prevented" from directly accessing a number of his physician customers.  While these claims may explain his poor sales performance, neither states a claim for discriminatory conduct.  There is no claim or evidence that Novartis assigned remote sales territories to older employees, and all sales representatives were affected by the decision of one of the areas largest healthcare providers to prohibit direct solicitation of doctors by pharmaceutical sales representatives.

Plaintiff alleges that older employees were targeted by Novartis and placed on Performance Improvement Plans because of their age, and that younger, similarly situated employees were not placed on Performance Improvement Plans.  Plaintiff, however, has provided no evidence to support this conclusory allegation, and defendant has provided evidence that several sales representatives under the age of forty were also placed on Performance Improvement Plans during the relevant time period.  Moreover, several sales representatives over the age of 40 who were meeting their sales expectations were not placed on Performance Improvement Plans. Plaintiff has simply provided no evidence to support his conclusory statements suggesting that older employees were targeted for discriminatory treatment.  Indeed, plaintiff was in his mid-fifties when he received positive performance reviews from his supervisor, who was also a member of the protected class of workers over the age of 40.

 B. Defendant has stated a Legitimate, Non-Discriminatory <u>Reason for terminating plaintiff's employment</u>.

Even if the Brunner could state a prime facie case of discrimination based on the termination of his employment, he has failed to rebut the legitimate, non-discriminatory reason proffered by Novartis for firing him.  Defendant has submitted unrebutted evidence that the plaintiff had become one of the poorer-performing sales representatives, and had violated company policy by allowing guests of physicians to attend an educational program sponsored by

Novartis.   Novartis also concluded after an investigation that
Brunner had improperly paid for a lunch and learn program that did
not prominently feature Novartis products.   Novartis contends that
it terminated Brunner's employment because he violated company
policy and was a poor performer.   These reasons set forth a
legitimate, non-discriminatory reason for terminating plaintiff's
employment.

> C.   Plaintiff has Failed to Rebut the Legitimate, Non-
> Discriminatory Reason Proffered by the Defendant for
> Terminating his Employment.

To rebut the defendants' proffered reason for terminating his
employment, a plaintiff must demonstrate that the reason offered by
the defendant is pretextual, and that the employer's action was
prompted by an impermissible motive.   Tomka v. Seiler Corp., 66
F.3d 1295, 1308.   McDonnell Douglas Corp. v. Green, 411 U.S. 792,
804 (1973).   A plaintiff may demonstrate pretext "either directly
by persuading the court that a discriminatory reason more likely
motivated the employer or indirectly by showing that the employer's
proffered explanation is unworthy of credence." Texas Department,
450 U.S. at 256.   Plaintiff has failed to make either showing.

As stated above, the unrebutted evidence demonstrates that
Brunner's sales performance had declined in 2008 and 2009.
Moreover, it is uncontested that plaintiff had violated company
policy by allowing guests of physicians to attend an educational
seminar, and holding the seminar at a location that could not

facilitate a group discussion by all participants. Against this evidence, plaintiff has alleged that older workers were targeted for termination of employment, and that he was targeted. Plaintiff, however, has failed to submit evidence to rebut the reasons offered by the defendant. Because Brunner has failed to establish a prima facie case of age discrimination, and has failed to rebut the defendants legitimate reason for terminating his employment, I grant defendant's motion for summary judgment, and dismiss plaintiff's claim of age discrimination in its entirety.

III. <u>Retaliation Claims</u>

Brunner alleges that he was retaliated against for filing an administrative complaint of employment discrimination with the EEOC prior to his employment being terminated. Specifically, Brunner alleges that he filed a complaint of discrimination with the EEOC on September 25, 2009, and was terminated from his employment on February 22, 2010 in retaliation for filing the Complaint.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. <u>Burlington Northern & Santa Fe Railway Co. V. White</u>, 548 U.S. 53, 68 (2006); <u>Holt v. KMI-Continental</u>, 95 F.3d 123, 130 (2d Cir. 1996), <u>cert</u>. <u>denied</u>, 1997 WL

71191 (May 19, 1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted).

While a causal connection between a protected activity and impermissible retaliation may be established by alleging that retaliatory activity took place soon after the plaintiff engaged in protected activity, in this case, where the alleged retaliation occurred almost five months after the protected activity, plaintiff can not establish any temporal relationship between the two actions.  <u>See</u> <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir.1990) (passage of three months is too long to suggest a causal relationship between protected activity and allegedly retaliatory conduct); <u>Davidson v. Midelfort Clinic, Ltd.</u>, 133 F.3d 499, 511 (7th Cir. 1998)(five month lapse between conduct and alleged retaliation too long to suggest a causal connection); <u>Sheafe-Carter v. Donohue, Slip Copy</u>, 2013 WL 4458746 at *7 (E.D.N.Y., August 16, 2013)(courts routinely dismiss claims of retaliation where there is a lapse between as short as three months between the protected activity and the alleged retaliatory conduct.)

In the instant case, almost five months passed from plaintiff's filing of his discrimination complaint and the termination of his employment.  Such a gap in the time from the protected activity to the allegedly retaliatory activity does not, as a matter of law, suggest a causal connection between the two

actions.   Because plaintiff has presented no other evidence to suggest that he was terminated from his employment because of his filing of an administrative complaint of discrimination, I find that he has failed to a state a prima facie case of retaliatory discrimination.  See also Williams v. Metro-North Commuter R. Co., Slip Copy, 2013 WL 4054718 at *9 (S.D.N.Y., August 06, 2013)(passage of three months between protected activity and allegedly retaliatory act too long too suggest causal connection between the two acts).  Moreover, Brunner was not insulated from adverse employment action simply because he had filed a complaint of discrimination.  It is well settled that an employer may take appropriate disciplinary action against an employee, including termination of employment, even if the employee has engaged in a protected activity.  See e.g. Orluske v. Mercy Medical Center-North Iowa, 455 F.Supp.2d 900, (N.D. Iowa, 2006)(engaging in protected activity does not insulate employee from discipline).

Even if Brunner could establish a prima facie case of discrimination, he has failed to rebut defendant's legitimate, non-discriminatory reason for terminating his employment.  Accordingly, I grant defendant's motion for summary judgment with respect to plaintiff's retaliation claims.

IV.  State Law Claims

Brunner alleges state law claims of age discrimination.  It is well settled that discrimination claims brought under the New York

Human Rights Law are analytically identical to claims brought under federal law.  <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (2nd Cir. 1996).  <u>See</u> <u>Haywood v. Heritage Christian Home, Inc.</u>, 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by <u>McDonnell Douglas</u> standard.).  Because I find that plaintiff has failed to state a claim of age discrimination under federal law, I find that he has failed to state a claim of employment discrimination under New York State law, and I grant defendant's motion for summary judgment with respect to plaintiff's state law claims.

### CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
_____
    Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          August 29, 2013